Good morning. Counsel. My name is Alex Flangus and I represent the appellant in this action, Douglas Moreland. I would like to reserve approximately three minutes on my rebuttal. Mr. Snyder is here, is that right? Yes, he is. He's not going to argue? I don't believe so. Okay. Although, he is my backstop in case I get stuck, so bear with me. There are some areas that I believe he knows better than I, quite a few, unfortunately. The issue in this case really boils down to a couple of simple undisputed facts. Interestingly, we were here once, a long time ago, and we are back. And I'm assuming you understand this case started back in 1997 and proceeded through a first trial at which we made a motion for summary judgment that was denied and then we went to a trial. The trial, we did not prevail on the right of first refusal, but we did prevail on appeal. In this case, from the very outset of the filing of the case, Douglas Moreland had an interest in the property. That interest in the property has never changed. There has been no order of the district court at any stage of any proceeding An interest in the property, an interest in property is different from a contractual right. Does he have a contractual right or an interest in property? He held essentially a right of first refusal, which is an interest in the property. It's considered an interest similar to an option right. And it is, in fact, entitled option in the original first case. The fact that he did not have a contractual right all by itself, he had an available right to purchase the property, that creates an equitable interest in the property itself, again, akin to an option, which is what this was entitled. Although the question of whether this sounds in property or whether it sounds in contract may have an implication for damages, and I thought that you stipulated that the damages would be sounded in contract. To the extent that specific performance is an unavailable remedy, and only to that extent, we would agree that damages would be an appropriate right. However, I have never varied in my position, my client has never varied. From the outset of every case, we have always maintained that a right to specific performance was what Douglas Moreland was here for. That never changed. That is significant in the way this case is analyzed, because the next thing How come you didn't protect that right during the first appeal? Because there was no need to. Procedurally, there was no need to, there was no requirement for a stay under the facts of this case. If a sale had been effectuated to a bona fide purchaser for value, someone without notice, that was a risk my client was willing to take, and we would have lost our specific performance rights. But there is no requirement to obtain a stay. The argument before you from the Respondents is that we were required to seek a stay. They misunderstand the purpose of the stay. The purpose of Rule 62 is to authorize and allow my client, if he so avails himself, similar to a supersedious bond, to come to the court, ask for a stay and ask for assistance, but not to authorize something that the judgment itself did not authorize. This was self-affecting. This judgment, as self-executing, said you have no right. Mr. Campani, Mr. Morsani in the first case, none of them asserted a counterclaim for an affirmative right to relief. The district court, therefore, did not order that Mr. Morsani, the seller, had a right and declared his rights so that I would then have a stay of that order. What he said was, you have no claim, Mr. Moreland, you are out. The distinction is critical, because what happens here is Campani steps in after the first case is over. He knew all about the transaction. He was a witness in the first trial. He shows up and they close a transaction while there's a pending appeal. At that point in time, that interest in property that we discussed is still resident in Moreland during the appeal. Campani recognized it and put it in his transaction documents. I will assume all risks. The opportunity to obtain a stay and not a requirement has been stated, first of all, in the Hidden Meadows case, but also in a case that I discovered recently, which was Salas v. Below, B-O-L-A-G-H, at 747 Pacific Second. Is this in your brief? Pardon? No, it is not. This is ñ What's the date of the decision? The date of this decision is 1987. Have you shared a copy with your opponent? I found it last night, Your Honor. If it's inappropriate, I won't go into detail. Well, you know, the rule 28J permits you to file a letter brief even after argument, but that gives your opponent the opportunity to see it. You understand that, don't you? I understand. Okay. And it's the benefit and burden of Westlaw, unfortunately. You can get online at 11 o'clock at night and still find something. So ñ Also push the button that says print three times. Well, yeah, that's what I didn't have, and I had to have it faxed to my hotel this morning when my office was in Reno, so I apologize. I'll just move on. Let me ask you a question. You asked for money damages against Morsani, right? Yes. And only specific performance against Campani? Yes. How do you get a money judgment against Campani? In essence, Your Honor, I think there's a mistake in that regard. I don't believe we're entitled to a money judgment directly against Mr. Campani, but we are entitled, although we don't want it, we want specific performance. We are entitled to a money judgment against Mr. Morsani, and there is simply ñ in this case, we know because of the transactional documents that Mr. Campani has picked up all of the obligations and requirements of Mr. Morsani. But I do not have a separate independent claim against Campani except ñ You want a different result. But if that were the case, would you agree we'd have to set aside the money judgment against Campani? It is an interesting question. And just let the judgment against Morsani stand. I believe that what I would do, Your Honor, I think that is correct. However, I would immediately, if there were an affirmance, I would immediately move for an order of garnishment in order to obtain the payments that Mr. Campani has to make under both the indemnity agreement and also under contract. That you would do whatever you want to do at district court. Correct. I ñ it is a difficult position because under the property theories, Mr. Campani is a successor in interest. And as a successor in interest, and the case has discussed this successor in interest concept, restatement of judgment section 44 says that a successor in interest of property that is subject of a pending action to which the transferor as a party is bound and entitled to the benefits of res judicata and the burdens as his transferor. And the rationale for it is very, very straightforward. If Mr. Campani, as in here, was aware, and I'm quoting now, was aware of the litigation but does not join as a party, he acquiesces in the transferor's continuing for purposes of the litigation to be the apparent owner of the interest in property, his doing so in effect treating the transferor as his representative in the action. Mr. Campani knew full well we were on appeal. Instead of joining into the matter at that stage, what he did was sit back, wait to see what happens, and then say, well, I'm protected because you failed to get a stay. The problem, however, is he was ñ It sounds to me like what Campani did was go to counsel and say, is there any constraint from my consummating this transaction with Morsani? And my guess is the answer was no. Well, he may have said, no, there's no constraint. However, there is an interest that is on appeal. See, that's the problem when you think about ñ when you think about the difference between the argument that we're obligated to get a stay and that we are given the opportunity to get a stay. We had an opportunity. Whether it would have been granted or not, I am not certain. Frankly, we couldn't have basically gone back to the district court and asked for a mandatory injunction at the conclusion of a trial where we were told you have no interest and you have no possibility of success on the merits. What the cases stand for, and the cases that we're talking about we cited, for example, in the Hidden Meadows case, the issue of whether you obtain any kind of supersedious bond if you fail to appeal the stay. Those cases were cited and quoted. The concept is, as to a true BFP, we would lose our specific performance rights to stand here and admit that. We've admitted that at the lower court. However, Mr. Campani is not a true BFP. There is no Liz Pendens protection in this case. In Nevada, there's a statute that says if there's a Liz Pendens and you go to court and specifically get an order expunging the Liz Pendens. Now, big distinction. You have to get an order expunging the Liz Pendens. You are then cloaked with this constructive bonafide purchaser status. Kennedy. The case the first time and you don't prevail, you take it up on appeal. Correct. And an earlier panel of the Ninth Circuit says, district court, you were wrong. The right does exist. You go back and the transaction has been consummated. So you proceed to a bench trial. Do I have that right? We proceeded we went back to court. We made a motion to amend and supplement the complaint. The district court. The proceeding was a bench trial.  In front of Judge McKibben. Yes, bench trial. And live were claims for specific performance. Correct. And damages. And he concluded that because of the passage of the events, the consummation of the transaction, the expenditures Mr. Campani or the Campani family have made in this dealership, it was inappropriate to grant you the equitable relief of specific performance, but he awarded damages. Do I have that right? That's in effect. The first case when we went back, we asked. If that's about right, why don't you tell me what's wrong with that? Okay. What is wrong with that is simply this. First of all, this is not an equitable analysis. The district judge made the first determination that Campani was entitled to rely on his judgment. In other words, in effect saying we had an obligation to obtain a stay. The discussion of the equities is after the fact saying, well, you know, at this point it would be inequitable. The judge doesn't go into details why it would be inequitable. Primarily, he says Morsani had a right to sell and Campani had a right to buy. And the problem with that is that if Campani takes it with notice of our interest, and he, as Restatement 44 discusses and Hidden Meadows discusses, if he takes that interest lightly and says I'm not worried about the appeal, I'll just sit back and wait, we all take our chances. But the problem is that that appeal came back and said that Moreland was entitled to the property. At the point that we went back to the district court and asked for relief, the transaction had already occurred. Stock had been transferred. The argument from this side is that we were obligated to stop them from transferring. And the answer is no. Sotomayor, whether you were obligated to or could if you wanted to, the fact is there was no prohibition against the consummation of the sale pending the first appeal. Right? Just as there is no prohibition. This was the situation Judge McKibben was faced with. Correct. It was, do I grant specific performance where there's already been a transaction and it might be difficult, probably would be difficult to unwind, or do I try to compensate the injured party through an appropriate measure of damages? What's wrong with the choice that he made? What's wrong with the choice that he made, Your Honor, is simply that the right of Mr. Campani to maintain and hold on to the dealership was lost when the Ninth Circuit said Mr. Moreland should have obtained it. Mr. Campani doesn't stand in a position of good faith. He stands in a position of a purchaser with knowledge. The concept of a purchaser with knowledge is you cannot rely on BFP principles. But if Hawkins said, why can't he then respond in damages? I think the issue on responding in damages is because we've elected the remedy of specific performance and attempted to pursue that. And really, there is no reason why specific performance cannot be allowed. Well, he gave, the judge gave several reasons why. I'm sorry? The judge gave several reasons why. He said four years have passed. The dealership has increased in value significantly due to the efforts of the Campagnis. It was a complex deal. It requires the Ford Motor Company to pass upon the transfer of the franchise. I mean, he gave reasons why. He didn't just come to him in a dream. But, Your Honor, I would suggest to you that if you read that decision, it is all premised upon his belief that we were required to get a stay, not have the opportunity to do so. If you look at the equities of the situation. But if he had said, I don't know whether they were required to or not, but here's the situation I'm faced with. This is the situation I'm faced with, and my choice is, do I specifically enforce something that might be difficult to unwind or to put back together, Humpty Dumpty's off the wall, or do I try to compensate the party that the Ninth Circuit told me was injured through damages, and so far you haven't made any progress convincing me, I don't know about my colleagues, that that was a bad choice. Let me suggest to you why it was a bad choice. First of all, we put on a case before we – if we have to get into the equities, we'll discuss that. We put on a case to the judge that was very clear. The purchase price that Morsani sold at, the purchase price that Mr. Campani purchased at was book value. There was no doubt about it. The book value is stated every single month on the Ford Motor Company's reports that Mr. Campani is required to file. You could look at the book value today, and if Moreland has to pay the book value just like Campani had to pay the book value, it's a simple transaction. It is not difficult. The passage of time, candidly, frustrates me. I made my motion for summary judgment within months of getting that decision back from the Ninth Circuit, and the district court judge waited approximately 10 months before denying the motion, and then we went all the way to March to get a trial. The passage of time is, you know, really not my fault. I've done everything I can. From an equitable standpoint, in fairness, the cases discuss the situation where a party purchases and says, I relied on the good faith judgment and I acted in good faith. And the courts have said, that is not an equitable consideration we should take into account. You can't act in good faith. Scalia, you're down to under a minute. Did you want to save any time for rebuttal? This is your time, and you can use it as you wish. I apologize. I'm trying to answer the question. No, you don't have to apologize. I think this is an important point. I will come back to it on rebuttal. Okay. Thank you. We'll give you a minute or so on rebuttal. Thank you, counsel. Good morning. May it please the Court. I'm Todd Russell. I'm here appearing on behalf of Mary and Richard Campani. Mr. and Mrs. Campani, Mr. and Mr. Campani purchased the Capital Ford dealership in March of 1999, almost five years ago. The Campanis purchased this particular dealership after Judge McKibben had made his decision in Moreland 1, and after no stay was obtained in Moreland 1. Absent a sphere, opponent argues that they were not required to get a stay as opposed to being able to get one. What's your response to that? They were absolutely required to get a stay, because when you have a valid judgment in the district court, the parties have an absolute right to rely on that judgment. Otherwise, Rule 62C becomes immaterial. It has no bearing or any effect whatsoever. When a valid judgment is entered, you have the right to enact on that, act on that judgment, enforce that judgment, and proceed on that judgment. That's exactly what happened in this particular case. You're absolutely correct. When Mr. Morsani won the particular action in the district court, Mr. Morsani and Mr. Campani, at arm's length, five months later, went ahead and consummated the deal. Mr. Moreland, if you read the transcript of the record, Mr. Moreland knew that this sale wasn't going to take place. Mr. Moreland knew that the sale had taken place, yet did nothing, did absolutely nothing to protect his rights. It must have been some thought in the back of somebody's mind about the possibility of it being turned around on an appeal. That's probably why somebody suggested the indemnity. Well, the indemnity agreement, you're correct. The indemnity agreement is between Mr. Morsani and Mr. Campani. It doesn't create any rights. So somewhere in the back of some good transactional lawyer's mind, it must have been we need to protect against the downside. Well, and that's exactly correct. But when no stay is obtained, it's not our burden to protect his judgment. It's not our burden to go out there and try to protect his rights. It's his burden to do that, Your Honor. And I think the case law is pretty clear on that in regards to that. This Court has held in the combined metals case that the appellant's burden to obtain a stay, and if he fails to do so, the fact that he's filed an appeal will not affect the validity of the judgment. I don't know how more clear you can be in regards to this particular matter, because it really truly is his burden, not our burden. Mr. Moore would like it both ways. He would like the benefits of a stay, but without getting a stay. And I don't think that's the law, and I think the law is really clear in regards to that. On the transfer of the stock from Morsani to Campani's, additionally, the action in regards by Mr. Moreland became moot, and I think the mootness document has been argued extensively in the briefs, and I'm not going to indicate it further here. But I think another important point is, if you read the NRA Filter Corporation case, it says a good faith buyer is one who buys in good faith and for value. And Judge McKibben made a specific determination in his decision that we were a good faith buyer, that there wasn't any fraud, there wasn't any collusion, there wasn't any coercion or anything involved in this particular case, other than the fact that there was a reliance on that particular judgment that was entered, and the failure to get a stay. In reference to the damage issues in regards to my client, there was no cause of action for damages in reference to the particular complaint for relief, and that's why we believe that damages were inappropriate to be awarded against the Campanis in this particular action, although we also are realistic, based upon our indemnity agreement, that we will have some obligation. But we felt that was an important point to point out to the court. If damages are appropriate in this case, we believe Judge McKibben was correct. He correctly looked at the stipulation between the parties. The parties had stipulated very distinctly on what those damages would be. And they were basically what the difference between the fair market value and the data purchased by the Campanis and what the Campanis paid. He determined the damage to be $207,000, and based upon that, he made that decision. I think the one final point that essentially Judge McKibben really, truly did, he tried to balance the equities here in his decision. He really looked at the fact, on one side we have somebody who didn't get a stay, knew that a sale was gonna take place, and didn't go forward to protect those rights. On the other side, he had somebody who basically relied on the judgment, who spent five years of their life building up a dealership, who put extensive amounts of work into that dealership, the numerous contracts, employees, and people that would be affected by undoing that in that regard and granting any kind of specific performance. And for that reason, he felt that it would be inequitable in this particular case. Thank you, Your Honor. Thank you. Please, the Court, my name is Doug Stone, and I represent Mr. Morsani. Our position, as we've been briefed, is that we don't believe that damages should have been awarded against Mr. Morsani. Specifically, we've identified a race judicata, collateral estoppel, and election of remedies. Mr. Camp Morland did end up with a judgment of specific performance against my client, but it is unenforceable because he failed to get a stay. We have made reference to the fact of whether you could have got a stay, not get a stay. The fact is, in this case, he did go forward and get and obtain a stay from the district court, preventing Mr. Camp Haney from selling the dealership, which he could have done exactly the same in the first lawsuit. Your client's position is that Mr. Morland should get nothing for his contractual right? That's right. That's right, because the judge ruled at the district court, Your Honorable Judge McKibben, that my client, Mr. Morsani, had the right to rely upon the judgment in Morland 1 in going forward and selling his dealership to Camp Haney. If Mr. Morsani had the right to rely upon that judgment, why should Mr. Morsani now be penalized by way of damages for doing what the court said he could rely upon? Why did your client agree to indemnify the Camp Haneys? No, it's the reverse. The Camp Haneys indemnified my client. Okay. Why? Why did we agree? Yeah. Why did they agree? That was the condition of the sale. We wanted to be – sell the dealership and we wanted to make sure all the bases were covered. It was to protect against what turned out. Can I finish? Oh, sure. It was to protect against what ultimately came to pass, wasn't it? That's right, such as the damages. There's no question. The indemnity indemnifies us against damages. But that doesn't mean that I agree or that we agree that damages should have been awarded in the first instance. We believe that if you allow damages to go forward against Mr. Morsani, you're basically allowing the – Mr. Moreland to get a free ticket and saying, well, I could have protected my rights, I didn't protect my rights, but that doesn't make any difference, I still can get damages. Why have the state provision if, in fact, it doesn't have any consequences as to Mr. Morsani? And if he gets allowed to go forward on damages, there are no consequences. You're basically saying that, oh, even though he made the election for specific performance and he lost the ability to enforce it because of his own conduct, we'll allow him to get damages anyway. Do I understand correctly that you object to the way the judge calculated the damages? Not – only in this instance. I don't think damages should have been calculated or should have been awarded against my client to begin with. Wait. It wasn't the question. No, no. The $207,000, the way he calculated and what he based it upon, that there was evidence to that effect and there was substantial evidence. And so I don't have an objection as to that. The remainder of my brief was to counteract the basis of their arguments to show that however you did it, you came up with basically the same numbers. So the $207,418 is not objected to. The objection is that none should have been awarded to begin with, because Mr. Morsani had the right to go forward and rely upon the judgment which he did, and he shouldn't then be penalized by saying that damages should be awarded against him for doing something that the Court felt that he had the right to do. Okay. I think we understand your argument. Thank you very much, counsel. Rebuttal. And how much time do I have, just to be certain? Why don't we say two minutes? Two minutes? Thank you. I'd like to respond to a couple of things. First of all, you're not required to get a stay. Why are you not required to get a stay? We've been all over that. But I want to be clear, though, that there are lots of cases where that doesn't occur, and if someone executes on the judgment, they have to make restitution. The issue on equities are these. Quite candidly, right down the line, Mr. Campani made millions of dollars in this case that he would never have been entitled to. My client did everything in a timely fashion, and it is the district court's procedure that puts me in this position where the district court can say, well, the passage of time, even though we made quick motions. Frankly, these gentlemen made motions for dismissal of the complaint for failure to obtain a stay. If he had made a decision right then, we'd have been back to the Ninth Circuit two years before. Third, what happens if you do grant specific performance is very simple. Mr. Moreland goes back to getting the dealership he should have gotten years ago. Mr. Campani retains millions of dollars that he was never really entitled to get, but he does get to keep it because we, taking the high road, chose not to go after it. We possibly could have, but we stipulated for a different theory. And finally, Mr. Morsani gets to keep the purchase price that he always agreed to. Equitably, this is straightforward. In the case in the Fifth Circuit in Horner v. Borland, the Court says, ''Mere hardship is not sufficient ground for denial of the right to specific performance of a contract otherwise subject to enforcement.'' The equitable concept of telling the – having the district court say in an afterthought, after it's decided that there is a right for Morsani to sell and a right for Campani to buy because of failure to obtain a stay, which I think is an inconsistent concept, the afterthought should suggest, well, there are equitable considerations here. There were no witnesses that testified in the trial below as to, I'm going to lose my job, these terrible things are going to happen, how difficult. There was very little evidence at all. What there was was the judge's decision that, well, if there is a right here, the passage of time will make it complicated. This judge didn't want to hear the second case when it came back to him. Keep in mind, we made a motion to supplement the complaint. The judge denied it without prejudice and said, and you have the transcript in one of the excerpts, let's let the next judge decide this. I think your time is up, counsel. Thank you for your argument. Thank both sides for their argument. The case that's argued will be submitted for decision, and we'll proceed to hear Benjamin or Benjamin versus Lorenzo. Counselor present, would they come forward, please?
judges: Hawkins, Silverman, Bybee